

FILED
U.S. DISTRICT COURT
DISTRICT

2016 JUL 20  PM 1: 17

CLERK'S OFFICE
AT BALTIMORE

_____ ___ _DEPUTY

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

Michael C. Hanlon
Chief, Violent Crimes
Michael.Hanlon@usdoj.gov

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT  410-209-4895
MAIN  410-209-4800
FAX  410-962-3124

July 19, 2016

Gerald Ruter, Esquire

Re:     United States v. Delray Randall
        Crim. No. JKB-15-649

Dear Mr. Ruter:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by July 20, 2016, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offenses of Conviction

1.      The Defendant agrees plead guilty to Counts One and Two of the Superseding Indictment now pending against him, in which he is charged with Conspiracy and Engaging in the Business of Dealing in Firearms Without a License, in violation of 18 U.S.C. §§ 371 and 922(a)(1)(A), respectively. The Defendant admits that he is, in fact, guilty of those offenses and will so advise the Court.

### Elements of the Offenses

2.      The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

Count One: Conspiracy

1.  An agreement existed between two or more persons to commit a crime in violation of the laws of the United States;
2.  The defendant knowingly became a member of the conspiracy; and
3.  A member of the conspiracy committed an overt act in furtherance of the conspiracy.

Count Two: Engaging in the business of dealing in firearms without a license

1. The defendant engaged in the business of dealing in firearms;
2. The defendant did not have a license as an importer, manufacturer or dealer in firearms; and
3. The defendant acted willfully

### Penalties

3.     The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows:

Count One: five years imprisonment; a $250,000 fine; and a period of supervised release of three years.

Count Two: five years imprisonment; a $250,000 fine; and a period of supervised release of three years.

In addition, the Defendant must pay $100 per count as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664. If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

### Waiver of Rights

4.     The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a.     If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.     If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the

2

Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

      c.     If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

      d.     The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

      e.     If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

      f.     By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

      g.     If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

      h.     By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he/she is not a citizen of the United States, pleading guilty may have consequences with respect to his/her immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his/her attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he/she wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5.     The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. " 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6.     This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto, which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

The offense level in this case is calculated as follows:

Base offense level is 20 or 24 (U.S.S.G. § 2K2.1(a))

Increase by 2 levels because the offense involved 3-7 firearms (U.S.S.G. § 2K2.1(b)(1))

Increase by 4 levels because the Defendant engaged in the trafficking of firearms (U.S.S.G. § 2K2.1(b)(5))

This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. In the event that the base offense level is 16 or greater, this Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose any adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

The parties agree to make a joint recommendation to the Court for a combined sentence of no less than 60 months (5 years) imprisonment, and no more than 96 months (8 years) imprisonment. The parties agree that the Court has the legal authority to impose consecutive or concurrent sentences as to Counts One and

4

Two in order to achieve a sentence of imprisonment that is consistent with the purposes and needs set forth in 18 U.S.C. § 3553(a).

7.     The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8.     With respect to the calculation of the advisory guidelines range (with the exception of the matters set forth in paragraphs 6 and 7), no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

### Obligations of the United States Attorney's Office

9.     At the time of sentencing, this Office will recommend a combined sentence (for both counts) of no greater than 96 months (8 years) imprisonment.

10.     The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Indictment that this Office has agreed to dismiss at sentencing.

### Forfeiture of Firearms

11.     The Defendant understands and agrees that as a result of his guilty plea, he will not be permitted to own, possess, or use a firearm. He forfeits all right, title, and interest in the firearms and ammunition identified in Attachment A.

### Waiver of Appeal

12.     In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

a)     The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

b)     The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

5

c)      Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d)      The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

13.     The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

14.     The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range

6

or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

15.     This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
    Michael C. Hanlon
    Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

**7/20/16**
Date

_____
Delray Randall

I am Delray Randall's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

**7. 20-16**
Date

_____
Gerald Ruter, Esquire

7

Attachment A

The United States would prove the following facts beyond a reasonable doubt at trial:

During April 2015, federal investigators in the District of Maryland received information ~~See~~ *mch* DR that an individual ~~(hereinafter identified as "CC1")~~, an undocumented alien, was selling illegal firearms in Maryland. Federal investigators, including agents from Homeland Security Investigations and the Federal Bureau of Investigation began an investigation of firearms trafficking in Baltimore City and other areas of Maryland. That investigation led to the identification of an individual, hereinafter identified as CC1, who was supplying firearms from outside Maryland to persons in Maryland. CC1 was arrested in connection with his own firearms activities and began cooperating with law enforcement.

Information from ~~CW~~ *CC1*, and examination of ~~CW~~ *CC1*'s cell phone, led to the identification of various persons to whom ~~CW~~ had been illegally selling firearms. One of ~~CW~~'s customers was defendant Delray Randall. Prior to CC1's arrest, Randall had purchased firearms from CC1 and brokered firearms sales between CC1 and other customers. Text communications between CC1 and Randall, prior to CC1's own arrest, showed that CC1 and Randall had engaged in firearms transactions together and that Randall was a customer of CC1.

During his cooperation, CC1 allowed federal law enforcement officers to monitor the communications on his cellular phone, including when CC1 had communication with his original firearms customers. During that time, CC1 engaged in monitored communications during which Randall would express his interest in meeting with CC1 and acquiring additional firearms from CC1, or in arranging firearms transactions between CC1 and others. The defendant agrees that, beginning in late 2014 and up to CC1's arrest on July 17, 2015, Randall and CC1 had engaged in the business of dealing in firearms without a license, and that each participated in and assisted the other's firearms activities. The defendant also admits that he agreed and conspired with CC1 (prior to CC1's arrest) other persons to engage in the business of dealing in firearms without a license. The defendant's conspirators included, among other persons, CC1 prior to CC1's arrest, and persons to whom the defendant firearms or brokered firearms purchases, and other persons with whom the defendant participated in the firearms trafficking activity discussed herein.

In the days leading up to December 12, 2015, CC1, acting on instruction from federal investigators, maintained communication with Randall. CC1 communicated to Randall that CW had firearms for sale and would be in the Baltimore area on December 12, ~~2012~~ *EP15*. Randall expressed an interest in meeting with CC1 and made statements (in both text message format and during recorded phone voice calls) that Randall was lining up other persons who were either going to purchase firearms from Randall or whom Randall would introduce to CC1 for the purpose of engaging in firearms purchases. Randall stated that he was lining people up for such transactions and inquired with CC1 about the availability and price of firearms.

On December 12, ~~2012~~ *2015*, Randall came to the hotel and met with CC1. Unknown to Randall, the room in which Randall and CC1 met was under law enforcement surveillance, and Randall's interactions and conversations with CW were video and audio-recorded. During the

meeting, Randall examined various firearms that CC1 had laid out as if they were for sale. Randall examined various firearms, inquired of the prices of various firearms, and told CC1 that Randall had people lined up either to purchase firearms from CC1 or from Randall.

During the December 12 event, Randall purchased and made a down payment for the following firearms:

One Cobra FS380 .380 handgun, serial number FS005736;

One Sig Sauer mosquito .22 handgun, serial number F024682;

One Hi-point model C 9mm handgun, serial number P009398;

One Hi-point model C9 9mm handgun, serial number P1217943.

While he was in the hotel room, Randall took photographs of the firearms with his own cell phone, and sent photographs of those firearms to his own customers. Randall engaged in text communications with his own customers in which he discussed possible prices for which the customers could purchase the firearms.

The defendant knowingly possessed the aforementioned firearms. The weapons were ~~capable of expelling~~ *designed to expel* a projectile by the action of an explosive *and had the frame and receiver of such weapons.*  *DR  not DR*

Randall admits that at the time of his arrest on December 12, 2015, he was engaged in the business of dealing in firearms as defined in 18 U.S.C. § 921. Randall sold and attempted to sell numerous firearms, and brokered the sale of firearms to other persons, did so on an ongoing basis, and did so with a predominating intent of obtaining livelihood and pecuniary gain. Randall has never had any license, under federal state or other law, to sell, import, manufacture or deal in firearms. Randall is not, has never been, and was not at the times relevant to this case, a federal firearms licensed dealer. At all relevant times, Randall acted with an awareness that his conduct in selling firearms was unlawful, and therefore acted with willfulness during the activities described herein.

Michael C. Hanlon
Assistant United States Attorney

I have read this Statement of Facts and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. I do not wish to change any part of it.

7/20/16
Date

Delray Randall

9

I am Delray Randall's attorney.  I have carefully reviewed every part of this Statement of Facts with him.  To my knowledge, his decision to sign it is a voluntary one.

7. 20·16

Date

Gerald Ruter, Esquire